OPINION OF THE COURT
Jerome C. Gorski, J.
*871 A hearing was held in the above-referenced matter concerning the issues of custody and relocation. The first application was by way of an order to show cause brought by the defendant requesting this court to prevent the plaintiff from permanently relocating to Bethany Beach, Delaware, and to obtain custody of the only child of plaintiff and defendant. The plaintiff filed a cross motion seeking relocation to the State of Delaware. This court in executing the order to show cause temporarily restrained the plaintiff from permanently moving to Delaware while these applications were pending.
The parties were divorced in May of 1996 and incorporated were the terms of a written property settlement agreement and an oral stipulation, a part of which gave custody to the plaintiff while permitting significantly liberal visitation to the defendant. The parties have apparently abided by the terms of the visitation schedule without any significant difficulty until June of 1996 when the plaintiff advised defendant that she was temporarily moving to Delaware with her boyfriend, now her husband, William Porter. In July of 1996, the plaintiff indicated to the defendant that she wished to permanently reside in Delaware due to the fact that her now husband, Mr. Porter, obtained permanent employment in the State of Delaware operating a charter boat for the owners of a company which uses the vessel for pleasure cruises or for fishing trips for clients of the company. From February 1996 to June of 1996, Mr. Porter had been living with the plaintiff and working as a welder for a company in the Buffalo area. He obtained a leave of absence from the company when he moved back to Delaware, his lifetime residence, in June of 1996.
CONCLUSIONS OF LAW
Although there was a significant body of law concerning the issue of relocation in existence prior to 1996, the Court of Appeals in March of 1996 issued its decision in Matter of Tropea v Tropea (87 NY2d 727 [1996]), wherein a detailed analysis of the factors to be used by trial courts was outlined. In that decision, the Court of Appeals analyzed two fact patterns indicating that it would reject a "mechanical approach” in deciding relocation issues in favor of a holding "that each relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child.” (Supra, at 739.) The Court decided that these matters must be evaluated *872 based upon all of the proof and whether it has been established by "a preponderance of the evidence that a proposed relocation would serve the child’s best interests”. (Supra, at 741.)
In that connection, the Court advised the triers of fact that they should be free to consider and give appropriate weight to all factors which might be relevant to the determination and among the nonexclusive facts which the courts are to consider are the following: "[T]he quality of the relationships- between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child’s future contact with the noncustodial parent, the degree to which the custodial parent’s and child’s life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.” (Matter of Tropea v Tropea, supra, at 740-741.)
In the fact pattern presented to this court, the preponderance of the evidence favors the position advanced by the defendant. It appears that the reason plaintiff seeks to move to Delaware is because the occupation currently engaged in by her new husband, Mr. Porter, exists in the State of Delaware. An analysis of that employment, however, does not lead this court to the conclusion that it is of the type which has the permanency and/or longevity conducive to long-term financial stability. It appears from the description of the employment that it is based wholly upon the economic policy of the company which employs Mr. Porter as it relates to their personal pleasure and the entertainment it seeks to offer its clientele. Any downturn, however slight, in either the company’s own business or the state of the general economy would dictate a relatively quick end to this pleasurable fringe. It appears that the plaintiff’s new husband has an ability to work as a welder in the Buffalo area and, in fact, did so for a matter of four or five months prior to obtaining this offer in his former State of residence.
There is no question that it is not necessary for the plaintiff to move to Delaware for her own economic benefit. She has testified that her employment in the computer field has and can continue to be operated out of her residence wherever that may be. Her annual income will not suffer in the least by her residence in the western New York area.
The testimony of both parties has indicated that both enjoy a meaningful relationship with their only child and the evidence indicates that, during the period following the parties’ divorce, the defendant availed himself fully of his visitation *873 rights while the child resided in the western New York area. He has, in addition, availed himself of his alternative access while the child has resided in Delaware and enjoys an excellent relationship with his child.
There appears to be no question that the move to Delaware would seriously impact upon the quantity and quality of the child’s future contact with the defendant. Visitation would require a lengthy auto trip to Buffalo taking approximately nine hours or would involve airplane travel at a rather tender age to Buffalo, which trip would require transportation from Delaware to Philadelphia airports. The visitation schedule, although generous, offered by the plaintiff would cut the defendant’s access to his child by approximately two thirds.
All of the relatives of both plaintiff and defendant reside in the western New York area. The testimony is uncontroverted that both plaintiff and defendant’s mothers provided day care for the child when each of the parties required same due to the demands of their occupations. That family day care asset would not be available in the State of Delaware as the only family contact which exists in Delaware attaches to the plaintiff’s new husband. The emotional stability which attaches to close family relationships is a significant factor taken into consideration by this court.
The parties apparently resided in Clarence, New York, due to their evaluation of the educational system existing in that community. Although this court has no basis for a criticism of the educational system in the State of Delaware, the parties’ decision to reside in Clarence apparently was made with educational facilities being one of the components of that process.
As stated earlier, the plaintiff’s finances will not, in any fashion, be affected by remaining in the western New York area.
Another issue about which there was testimony concerned the health of the plaintiff and Mr. Porter. Although this court does not mean to demean or lessen the significance of the testimony offered, the parties never established that the conditions were so disabling that continued residence in western New York was impossible. No medical testimony was presented to this court and it was established that Mr. Porter worked as a welder for many years in the Delaware area prior to coming to western New York. It would appear that any difficulty in working as a welder must have been controlled by medication or some other adequate means.
*874 The plaintiff indicated in her testimony that, should this court deny her application to relocate to the State of Delaware, she would return to western New York with her daughter. This court’s ruling, therefore, is that the application of the plaintiff to relocate is denied and the application of the defendant for custody is granted, unless plaintiff takes reasonable steps to reside in western New York in reasonably close proximity to her former residence within 45 days of the entry of this order.